UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COMMUNITIES FOR EQUITY,
 *et al.*,

    Plaintiffs,

v.

MICHIGAN HIGH SCHOOL
ATHLETIC ASSOCIATION,

    Defendant.
_____/

Case No. 1:98-CV-479

HON. RICHARD ALAN ENSLEN

**OPINION**

  This matter is before the Court on the Motion to Intervene pursuant to Federal Rule of Civil Procedure 24(a) filed by the Michigan High School Tennis Coaches' Association ("MHSTeCA"), Amy Christman, as next friend of L.C., Richard D. Friedman, as next friend of R.A.F., and Rafat Rizk, as next friend of M.R. (collectively, "Tennis Applicants"). This Motion has been fully briefed and the Court discerns no reason for oral argument. *See* W.D. MICH. LCIVR 7.2(d).

**I. BACKGROUND**

  The procedural posture of this class action lawsuit is a known quantity to this Court, the parties, lawyers, and to the public through media reports. This action began nine years ago in June 1998. In 2001, the Court determined that Defendant Michigan High School Athletic Association's scheduling of the interscholastic athletic seasons in Michigan violated the Equal Protection Clause of the Fourteenth Amendment, Title IX, 20 U.S.C. § 1681, and Michigan's Elliot-Larsen Civil Rights Act, Mich. Comp. Law. §§ 37.2101-37.2804. *See Cmtys. for Equity v. Mich. High Sch. Ath. Ass'n*, 178 F. Supp. 2d 805 (W.D. Mich. 2001). The Court enjoined Defendant from its current scheduling

and ordered it to submit a Compliance Plan rescheduling sports seasons to comply with the law. *Id*. at 862. On November 8, 2002, this Court approved Defendant's Amended Compliance Plan. *See also Cmtys. for Equity v. Mich. High Sch. Ath. Ass'n*, 377 F.3d 504, 506-11 (6th Cir. 2004) (recounting a thorough summary of the case). The case then spent the next five years winding its way through the appellate process.

Most recently, after being twice affirmed by the Sixth Circuit Court of Appeals, the Supreme Court denied Defendant *certiorari* on April 2, 2007. Shortly following that denial, the present Applicants filed their Motion to Intervene seeking to modify the Compliance Plan to maintain the Lower Peninsula high school girls' tennis season during the fall. On June 7, 2007, a second Motion to Intervene was filed by certain coaches of Upper Peninsula high school girls' soccer teams and certain parents of team members, as next friends, seeking to modify the Compliance Plan to maintain girls' soccer in the Upper Peninsula during the spring season. On June 12, 2007, a third Motion to Intervene was filed by certain coaches of Upper Peninsula high school boys' soccer teams and certain parents of team members, as next friends, seeking to modify the Compliance Plan to maintain boys' soccer in the Upper Peninsula during the fall season.[1]

**II.    LEGAL STANDARDS**

Pursuant to Federal Rule of Civil Procedure 24(a), "Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the

---

[1] The Court will address the Tennis and Soccer Motions for Intervention separately.

applicant's interest is adequately represented by existing parties." The Sixth Circuit has held that pursuant to Rule 24(a), a proposed intervenor must show: (1) the motion is timely; (2) the proposed intervenor has a substantial interest in the action; (3) that interest is likely to be impaired by the disposition of the lawsuit; and (4) the existing parties cannot adequately protect that interest. *Bradley v. Miliken*, 828 F.2d 1186, 1191 (6th Cir. 1987); *Jordan v. Mich. Conference of Teamsters Welfare Fund*, 207 F.3d 854, 862 (6th Cir. 2000). It is an applicant's burden to demonstrate these four prongs and if any one of these criteria is not established, the motion must be denied. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 471 (6th Cir. 2000) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)); *see also Linton v. Comm'r of Health & Env't*, 973 F.2d 1311, 1317 (6th Cir. 1992).

### III.    LEGAL ANALYSIS

After consideration and review, the Court finds the Tennis Applicants have failed to show their interests were not represented during the action and have failed to show their motion is timely.

A.    Timeliness

A Court has discretion to determine whether a motion is timely and such timeliness is determined within the context of all relevant circumstances of the case. *See NAACP v. New York*, 413 U.S. 345, 365 (1973); *Mich. Ass'n for Retarded Citizens v. Smith*, 657 F.2d 102, 105 (6th Cir. 1981); *Bradley*, 828 F.2d at 1191. The following factors should be considered when determining whether a motion is timely: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention. *Stupak-Thrall,* 226 F.3d at 473.

In regard to the first factor, the present case is currently post-judgment, having been affirmed by the Sixth Circuit on two separate occasions. The action has been litigated for nine years and the Compliance Plan is just now within months of implementation. This factor weighs heavily against a finding of timely intervention. *See Mich. Ass'n for Retarded Citizens*, 657 F.2d at 105 (holding motion to intervene was untimely where 20 months had passed since litigation began and one month since entry of judgment); *Jordan*, 207 F.3d at 862 (holding failure to intervene before final judgment rendered motion to intervene untimely).

The second factor, the purpose for which intervention is sought, also militates against a finding of timely intervention. Tennis Applicants contend most ardently their purpose is to achieve the "optimal" season for girls to play tennis and seek for the Court to hold the most advantageous season for girls' tennis in the Lower Peninsula is the fall rather than the spring. Stated another way, Tennis Applicants seek for the Court to make new findings of fact and participate in the remedial process. In *United States v. Tennessee*, 260 F.3d 587, 593 (6th Cir. 2001), the Sixth Circuit held that where the proposed intervenors' purpose in intervention was to participate in future remedial proceedings, such a purpose weighed against finding intervention was timely. The present situation is similar as Tennis Applicants seek to participate in a remedial process which was completed in 2002 and has not yet been enacted. Therefore, the Court finds this factor strongly weighs against a finding of timely intervention.

The Court finds the third factor, the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case, does not favor timeliness. The Tennis Applicants argue they have intervened at the first opportunity as they could not have anticipated their children's interests in the action when the case began. In light of the extensive media attention and its duration, the Court finds it completely unpersuasive that resident

parents were without knowledge of this litigation or its potential to effect the high school interscholastic scheduling.[2] The Sixth Circuit has held that "several newspaper articles" were sufficient to apprise proposed intervenors of their rights before a consent decree entered. *Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 583 (6th Cir. 1982); *NAACP v. New York*, 413 U.S. 345, 366-67 (1973) (holding it was reasonable for a lower court to conclude applicants knew or should have known of the pendency of the action because of an informative newspaper article and public commentary); *see also Johnson v. City of Memphis*, 73 Fed. App. 123 (6th Cir. 2003) (unpublished) (motion to intervene after summary judgment was untimely where newspaper articles should have apprised applicants of their interest). In the present action, the media attention was much more extensive, and all important decisions were posted on the Court's internet site to provide public notice. Defendant also disseminated information to its member schools through bulletins and meetings. The Tennis Applicants did or should have known of their interest at least during 2001 when the case was proceeding to trial and before the Compliance Plan was formed.

The fourth factor also weighs against finding Tennis Applicants' Motion to Intervene timely. It is clear that to allow intervention at this stage presents a prejudice to both Plaintiffs and Defendant. The remedy would be delayed in its implementation, girls would have at least another season of discriminatory scheduling, and the expense in re-litigating these issues would continue to rise exponentially. Tennis Applicants contend the fact the Compliance Plan has not yet been enacted obviates any prejudice. This argument ignores the practicality of what Tennis Applicants seek – to

---

[2]As for the MSHTeCA, the Tennis Applicants admit it was involved and kept abreast of the litigation during the entire action. To the extent Tennis Applicants argue MSHTeCA's inability to pay for counsel justifies their delay despite their knowledge, the Court is unpersuaded. As Plaintiffs' point out, they themselves have litigated this matter through *pro bono* counsel for the past nine years.

modify a balanced and equitable Compliance Plan.  As Defendant laboriously detailed in its briefing, the Compliance Plan was not created by chance or without the extensive involvement of its member schools. Tennis Applicants wish to modify one aspect of the Compliance Plan and ignore the fact that to allow such a change would necessitate Defendant reevaluating the entire Compliance Plan and again seeking information from its member schools.[3]  This process would not only delay implementation of the remedy but also increase costs to all parties.  Further, the Court notes that to allow this Motion to Intervene would likely create a slippery slope in which other individuals unhappy with scheduling of other sports will seek to modify the Order, delaying the implementation of the Compliance Plan.  Tennis Applicants stated in briefing that Plaintiffs' fear that "hordes of litigants will descend on the Court, and all the results of litigation will be undone . . . is fanciful." (Reply at 7.)  However, just a few short weeks later, this Court received two more motions to intervene seeking to modify the Compliance Plan.  In light of the likelihood of delay and increased costs and litigation, this factor weighs against timeliness.

---

[3]The Court recognizes that any switch in the Compliance Plan at this stage would be extremely prejudicial to the female athletes who have already made their decisions regarding what sports they will pursue based on the Compliance Plan schedule and also to Defendant who would face the daunting task of rescheduling.  Michigan High School Athletic Association spokesman John Johnson has stated to the media, "The proverbial window of opportunity [for change in the Compliance Plan] is nearly slammed shut."  Jeff Arnold, *Friedman contends that Tennis should not change seasons*, ANN ARBOR NEWS (July 11, 2007).  Tennis Coach Tom Pullen is credited with stating that to "switch back now would be a 'nightmare'. . . and that to reverse the schedule again would be problematic." *Id*.

This issue is also evident in Defendant's last minute addendum filed on July 12, 2007, which seeks to modify its position as to what sports could and should be stayed if Tennis Applicants are granted relief, given the "passage of time" and the fact that "it is neither practical nor possible for schools to revert back to the prior schedule in all six sports."  (Add. at 2.)

Finally, although there are some factors which make this case unique, including the indefinite nature of the remedy, this does not weigh in favor of Tennis Applicants so as to show their motion is timely at this post-judgment juncture.

Therefore, in weighing all the factors, the Court finds that Tennis Applicants' Motion to Intervene is untimely and must be denied. *Stupak-Thrall*, 226 F.3d at 471.

B.      Representation of Interests

The Court further notes that even had Tennis Applicants' Motion to Intervene been found to be timely, their Motion must be denied because they have failed to show their interests were not adequately protected by the parties.

The Court recognizes that adequate representation is presumed when the proposed intervenor and one of the parties have the same objective and also when a government entity purports to represent their interest. *Bradley*, 828 F.2d at 1192 ("An applicant for intervention fails to meet his burden of demonstrating inadequate representation when no collusion is shown between the representatives and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in its fulfillment of his duty."); *see also United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 987 (2d Cir. 1984) ("The mere existence of disagreement over some aspects of the remediation necessary to abate the hazard does not demonstrate a lack of capacity on the part of the government as *parens patriae* to represent its constituents fairly and faithfully.")

Tennis Applicants argue neither Plaintiffs nor Defendant represented their interests during the litigation. Tennis Applicants claim the evidence to support this assertion is the fact that there was little time devoted to fact finding on the issue of girls' tennis and the fact that the Tennis Applicants construe their interest as being an interest in having the most advantageous Tennis season. The

7

Court first notes that Tennis Applicants have a substantial interest in playing sports and taking part in a non-discriminatory system which balances the inequities between both boys' and girls' athletics. *See e.g.*, *Bradley v. Pinellas County Sch. Bd.*, 165 FRD 676 (M.D. Fla. 1994) (holding that intervention to serve an individual interest is inappropriate in a school desegregation case). Tennis Applicants do not have a substantial interest in playing a particular sport in what they believe is the most desirable season. To this end, the Court finds the interests of girls' tennis were represented in the action by Plaintiffs who sought to end discrimination and who represented *all future* and current female athletes in Michigan high schools. The motivation behind the Court-ordered remedy was to achieve equity in the schedule between girls' and boys' sports. However, such equity does not translate into girls having the advantageous season for every sport; rather, the Compliance Plan sets forth a schedule in which boys and girls equally share the burden for playing in disadvantageous seasons. The Court specifically set forth in its Findings of Fact that spring was the advantageous season for girls' tennis. *Cmtys. for Equity*, 178 F. Supp. 2d at 836. The Court notes that "disagreement over litigation strategy or individual aspects of a remediation plan does not, in and of itself, establish inadequacies of representation." *Bradley*, 828 F.2d at 1192. Although Plaintiffs did not advocate for the season which Tennis Applicants now argue is the advantageous season, such a disagreement cannot show Plaintiffs failed to represent Tennis Applicants interest in achieving a non-discriminatory athletic scheduling system. Moreover, the United States was allowed to participate as "litigating amicus" on behalf of all of Michigan's high school girls, and also participated after the trial during the Compliance Plan process. This representation further indicates that Tennis Applicants' interests in achieving a non-discriminatory athletic scheduling system were adequately represented throughout the action. *Bradley*, 828 F.2d at 1192

One could also argue that Tennis Applicants' specific viewpoint that girls' tennis should remain in the fall was represented through Defendant.  Defendant submitted in its Findings of Fact that 16 other states sponsor girls' tennis in the fall and Michigan rates seventh in participation, and argued generally that girls' sports scheduling (including tennis) should remain unchanged.  (Def.'s Proposed Findings of Fact at ¶ 13.)  Further, Tennis Applicant MSHTeCA had one of its own members on Defendant's witness list, and was listed to testify at trial, although she did not actually give testimony.  Therefore, the Court finds that Tennis Applicants' interests were adequately represented to this Court.  Although Tennis Applicants may now disagree with the outcome as to girls' tennis, this disagreement does not justify their intervention.

IV.  **CONCLUSION**

Therefore, this Court finds that Tennis Applicants' Motion to Intervene as a right must be denied as Tennis Applicants have failed to show that such Motion is timely and have failed to show that their interests were not adequately protected by the parties to the action.

An Order consistent with this Opinion shall issue.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>July 13, 2007 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |