UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COMMUNITIES FOR EQUITY,
 *et al.*,

        Plaintiffs,

v.

MICHIGAN HIGH SCHOOL
ATHLETIC ASSOCIATION,

        Defendant.
_____/

Case No. 1:98-CV-479

HON. RICHARD ALAN ENSLEN

**OPINION**

Pending before this Court are two Motions to Intervene filed by certain coaches of girls' and boys' high school soccer in the Upper Peninsula and by certain parents of team members (collectively, "Soccer Applicants"). The Court will address these Motions simultaneously as the arguments and briefing are nearly identical. Moreover, these Motions have been fully briefed and the Court find no reason for oral argument. *See* W.D. MICH. LCIVR 7.2(d).

I.    **BACKGROUND**

The procedural posture of this class action lawsuit is a known quantity to this Court, the parties, lawyers, and the public through media reports. This action began nine years ago in June 1998. In 2001, the Court determined that Defendant Michigan High School Athletic Association's scheduling of the interscholastic athletic seasons in Michigan violated the Equal Protection Clause of the Fourteenth Amendment, Title IX, 20 U.S.C. § 1681, and Michigan's Elliot-Larsen Civil Rights Act, Mich. Comp. Law. §§ 37.2101-37.2804. *See Cmtys. for Equity v. Mich. High Sch. Ath. Ass'n*, 178 F. Supp. 2d 805 (W.D. Mich. 2001). The Court enjoined Defendant from its current

scheduling and ordered it to submit a Compliance Plan rescheduling sports seasons to comply with the law. *Id.* at 862. On November 8, 2002, this Court approved Defendant's Amended Compliance Plan. *See also Cmtys. for Equity v. Mich. High Sch. Ath. Ass'n*, 377 F.3d 504, 506-11 (6th Cir. 2004) (recounting a thorough summary of the case). The case then spent the next five years winding its way through the appellate process. Most recently, after being twice affirmed by the Sixth Circuit Court of Appeals, the Supreme Court denied Defendant *certiorari* on April 2, 2007.

On April 12, 2007, the Michigan High School Tennis Coaches' Association and other individuals filed a Motion to Intervene in the action (collectively, "Tennis Applicants"). A few short weeks after briefing was complete on that issue, two additional Motions to Intervene were filed by certain coaches of boys' and girls' Upper Peninsula soccer and certain parents of team members, as next friends. Those additional Motions to Intervene were filed shortly after the Tennis Applicants called any fear that "hordes of litigants will descend on the Court, and all the results of litigation will be undone . . . is fanciful." (Reply at 7.)

The current Motions to Intervene seek to modify the Compliance Plan to maintain girls' soccer in the Upper Peninsula during the spring season and maintain boys' soccer in the Upper Peninsula during the fall. This change in the Compliance Plan would align the Upper Peninsula and Lower Peninsula soccer programs.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 24(a), "Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action

may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." The Sixth Circuit has held that pursuant to Rule 24(a), a proposed intervenor must show: (1) the motion is timely; (2) the opposed intervenor has a substantial interest in the action; (3) that interest is likely to be impaired by the disposition of the lawsuit; and (4) the existing parties cannot adequately protect that interest. *Bradley v. Miliken*, 828 F.2d 1186, 1191 (6th Cir. 1987); *Jordan v. Mich. Conference of Teamsters Welfare Fund*, 207 F.3d 854, 862 (6th Cir. 2000). It is an applicant's burden to demonstrate these four prongs and if any one of these criteria is not established, the motion must be denied. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 471 (6th Cir. 2000) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)); *see also Linton v. Comm'r of Health & Env't*, 973 F.2d 1311, 1317 (6th Cir. 1992).

### III.    LEGAL ANALYSIS

The Court finds the Soccer Applicants have failed to carry their burden under Rule 24(a) in showing that their motion is timely and that their interests were not adequately represented by Plaintiffs or Defendant in this action pursuant to Rule 24(a).

A.    Timeliness

A Court has discretion to determine whether a motion is timely and such timeliness is determined within the context of all relevant circumstances of the case. *See NAACP v. New York*, 413 U.S. 345, 365 (1973); *Mich. Ass'n for Retarded Citizens v. Smith*, 657 F.2d 102, 105 (6th Cir. 1981); *Bradley*, 828 F.2d at 1191. The following factors should be considered when determining whether a motion is timely: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original

parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention. *Stupak-Thrall,* 226 F.3d at 473.

In regard to the first factor, the present case is currently post-judgment, having been affirmed by the Sixth Circuit on two separate occasions. The action has been litigated for nine years and the Compliance Plan is just now within months of implementation. This factor weighs heavily against a finding of timely intervention. *See Mich. Ass'n for Retarded Citizens*, 657 F.2d at 105 (holding motion to intervene was untimely where 20 months had passed since litigation began and one month since entry of judgment); *Jordan*, 207 F.3d at 862 (holding failure to intervene before final judgment rendered motion to intervene untimely).

The second factor, the purpose for which intervention is sought, also militates against a finding of timely intervention. Soccer Applicants contend their purpose is to modify the Compliance Plan such that Upper Peninsula soccer programs are excised. Stated another way, Applicants seek to participate, post-judgment, in the remedial process. In *United States v. Tennessee*, 260 F.3d 587, 593 (6th Cir. 2001), the Sixth Circuit held that where the proposed intervenors' purpose in intervention was to participate in future remedial proceedings, such a purpose weighed against finding intervention was timely. The present situation is similar, as Soccer Applicants seek to participate in a remedial process which was completed in 2002 and has not yet been enacted. Therefore, the Court finds this factor weighs against a finding of timely intervention.

The Court finds the third factor, the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case, does not favor timeliness. The Soccer Applicants argue they have intervened at the first opportunity as they could

4

not have anticipated their children's interests in the action when the case began. In light of the extensive media attention and its duration, the Court finds it completely unpersuasive that resident parents were without knowledge of this litigation or its potential to effect *all* high school interscholastic scheduling. The Sixth Circuit has held that "several newspaper articles" were sufficient to apprise proposed intervenors of their rights before a consent decree entered. *Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 583 (6th Cir. 1982); *NAACP v. New York*, 413 U.S. 345, 366-67 (1973) (holding it was reasonable for a lower court to conclude applicants knew or should have known of the pendency of the action because of an informative newspaper article and public commentary); *see also Johnson v. City of Memphis*, 73 Fed. App. 123 (6th Cir. 2003) (unpublished) (motion to intervene after summary judgment was untimely where newspaper articles should have apprised applicants of their interest). In the present action, the media attention was much more extensive, and all important decisions were posted on the Court's internet site to provide public notice. Defendant also disseminated information to its member schools through bulletins and meetings. The Applicants did or should have known of their interest at least during 2001 when the case was proceeding to trial and before the Compliance Plan was formed.

      The fourth factor also weighs against finding Soccer Applicants' Motion to Intervene timely. It is clear that to allow intervention at this stage, that would delay the implementation of the Compliance Plan, would present a prejudice to both Plaintiffs and Defendant. Soccer Applicants argue that there will be no delay and no added expense because their requested relief is to simply excise Upper Peninsula soccer from the Compliance Plan. To the extent Defendant agrees that the Upper Peninsula soccer seasons could be exempt from the Plan without disrupting the balance of the entire schedule, the Court finds that such relief would not prejudice the parties. However, this Court

recognizes that allowing tinkering of the Compliance Plan at this stage will open a floodgate to those who are dissatisfied with a specific scheduled season, which will result in likely delays and expenses. Therefore, the Court finds this factor is neutral in determining whether the Motion to Intervene is timely.

Finally, although there are some factors which make this case unique, including the indefinite nature of the remedy, this does not weigh so strongly in favor of Applicants as to show their motion is timely at this post-judgment juncture.

Therefore, in weighing all the factors, the Court finds that Applicants' Motion to Intervene is untimely and must be denied. *Stupak-Thrall*, 226 F.3d at 471.

B.     Representation of the Parties

Adequate representation is presumed when the proposed intervenor and one of the parties have the same objective and also when a government entity purports to represent their interests. *Bradley*, 828 F.2d at 1192 ("An applicant for intervention fails to meet his burden of demonstrating inadequate representation when no collusion is shown between the representatives and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in its fulfillment of his duty."); *see also United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 987 (2d Cir. 1984) ("The mere existence of disagreement over some aspects of the remediation necessary to abate the hazard does not demonstrate a lack of capacity on the part of the government as *parens patriae* to represent its constituents fairly and faithfully.")

Soccer Applicants have argued their interests were not represented by Plaintiffs in the action because Plaintiffs "represent female volleyball and basketball high school teams whose interests do

not align themselves with high school girls soccer in the U.P." (Mot. at 5.) Soccer Applicants also argue Defendant did not represent their interests as it was Defendant who chose the current Compliance Plan which could effectively end the girls' and boys' soccer programs in the Upper Peninsula.

First, the Court notes that although Soccer Applicants believe Plaintiffs only represented the interests of volleyball and basketball high school teams, this is not so. In fact, Plaintiffs brought this class action lawsuit on behalf of *all future* and current female athletes in Michigan high schools, not just girls' volleyball and basketball players. *See Cmtys. for Equity,* 178 F. Supp. 2d at 806. Like the Tennis Applicants, Soccer Applicants have attempted to define their interests narrowly as being an interest in playing a sport in the most advantageous season. The motivation behind the Court-ordered remedy was to achieve equity in the schedule between girls and boys sports. However, such equity does not translate into boys or girls having the advantageous season for every sport; rather, the Compliance Plan sets forth a schedule in which boys and girls equally share the burden for playing in disadvantageous seasons. Therefore, Soccer Applicants, boys and girls, only have an interest in playing high school athletics in part of a non-discriminatory scheduling system which complies with the law. *See e.g.*, *Bradley v. Pinellas County School Bd.*, 165 FRD 676 (M.D. Fla. 1994) (holding that intervention to serve an individual interest is inappropriate in a school desegregation case).

The Court finds Plaintiffs adequately represented Soccer Applicants' interests in this action. This is evidenced not only in Plaintiffs commitment to achieving a non-discriminatory athletic schedule, but Plaintiffs presented the Court with almost verbatim arguments to keep Upper Peninsula girls' soccer (and therefore boys') seasons aligned with the Lower Peninsula in their opposition to

7

Defendant's Proposed Compliance Plan in 2003. (*See* Dkt. No. 612 at 5-10.)  Further, this Court addressed these arguments in an Opinion and Order issued in February 2003, holding:

> The Court defers to Defendants to develop a plan to bring the Michigan high school athletic program into compliance with Title IX and the Constitution.  Defendants have proposed a plan which, although it may not be the one Plaintiffs or even this Court would choose, if it complies with constitutional requirements, must be upheld.  Defendants were ordered to propose a plan for high school athletics that equitably allotted athletic opportunity to boys and girls.  In response, Defendants approached their constituent schools and determined that the Court's Option 2, presented as Defendants' Plan, was most desirable.  The Court will not question that decision based on Plaintiffs assertions that this is not really what the schools want and does more harm than good to Upper Peninsula girls.  This Court should not intrude any more than necessary into Defendants' autonomy.
>
> Plaintiffs next state that the Plan will result in destruction of the girls' soccer program in the Upper Peninsula because there will not be enough teams to compete against for the fledgling program to survive.  *Whether this will happen is conjecture and not something the Court can rely on in determining whether the Plan is equitable.  As stated above, it is not for this Court to dictate the details of Defendants' compliance plan.  All this Court should do is define the parameters of a constitutional program and determine whether Defendants' Plan is within those parameters.  The potential for girls' soccer in the Upper Peninsula to be rendered defunct does not leave Defendants' Plan inequitable.*

*Cmtys. for Equity v. Mich. High Sch. Ath. Ass'n*, 2003 U.S. Dist. LEXIS 2872 at *6-7 (W.D. Mich. Feb. 27, 2003) (emphasis added) (Dkt. Nos. 625 & 626).

In summary, Defendant chose a remedy which was equitable on the whole.  It was not the Compliance Plan Plaintiffs would have chosen, nor obviously the remedy the current Soccer Applicants would have chosen.  However, this disagreement does not convince the Court that Soccer Applicants' interests were not adequately and fully represented by Plaintiffs.  *See Bradley*, 828 F.2d at 1192 (holding a "disagreement over litigation strategy or individual aspects of a remediation plan does not, in and of itself, establish inadequacies of representation.")

## IV.   CONCLUSION

Therefore, this Court finds that Applicants' Motions to Intervene as a right must be denied as Soccer Applicants' have failed to show that the Motions are timely and have failed to show that their interests were not adequately protected by the parties to the action.

An Order consistent with this Opinion shall issue.

                                             /s/ Richard Alan Enslen  
DATED in Kalamazoo, MI:          RICHARD ALAN ENSLEN  
       July 13, 2007                    SENIOR UNITED STATES DISTRICT JUDGE